UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARGO HIGGINS,

       Plaintiff,

v.                                   Case No. 2:06-cv-67
                                        CONSENT CASE

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## OPINION

In May of 2002, plaintiff Margo Higgins filed an application for supplemental security income (SSI) benefits with the Social Security Administration.  She claimed that she became disabled as a result of physical and mental problems on April 15, 2002.  After her application for SSI benefits was denied, plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Plaintiff was informed on several occasions of her right to be represented by an attorney, but chose to proceed *pro se*.  The ALJ concluded that while plaintiff was unable to perform her past relevant work, she did have the residual functional capacity to "perform unskilled, simple, low-stress work at the sedentary and light exertional levels that involves only limited public contact."  Transcript of Administrative Proceedings at page 17A (hereinafter "Tr at ___").  Plaintiff then sought review from the Social Security Administration's Appeals Council, which denied her request for review.  Thereafter plaintiff filed suit in this Court.  On July 6, 2006, the parties filed a consent to the jurisdiction of a United States Magistrate Judge and the matter was reassigned to the undersigned.  The parties have briefed the issues, and the matter is ready for decision.

Plaintiff was born on July 26, 1965, and claims she is disabled as a result of fibromyalgia, clinical depression, panic attacks, personality disorder, high blood pressure, diabetes, obesity, and a seasonal disorder.  Tr. at 37, 43.  Plaintiff takes a variety of medications for her anxiety and depression and also takes medication to treat her diabetes and high blood pressure.  Tr. at 85.  Plaintiff has past work experience as a waitress, cashier, welder, and gas station attendant. Tr. at 15.  Her work history between 1983 and 2003 is sporatic.  Tr. at 40-41.  The Northern Menominee Health Center records from February of 2002 indicate that plaintiff was "awake, oriented and in no apparent distress.  Vital signs are stable and afebrile.  Skin warm and dry. HEENT unremarkable.  Neck supple, no thyromegaly, no JVD.  Chest clear.  Heart regular, no murmur.  Abdomen soft and non tender.  Muscular skeletal full ROM.  Neuro sensation to fine touch and pin prick intact.  Motor, tone, power and DTR are grossly intact."  The records also indicate that plaintiff suffered from diabetes and was being treated for depression with Paxil.  Tr. at 98.  An examination of her cervical spine conducted in November of 2001 showed no evidence of any fractures or boney abnormalities.  Tr. at 114.  An examination by Dr. Khan in May of 2002 indicated that plaintiff was complaining of not having energy and that she was incapable of doing anything for more than two to three hours.  Her blood pressure was 140/92 and her joint examination was unremarkable.  She had a complete range of motion, but was diagnosed with fibromyalgia with positive EBV titer and an elevated "sed rate."  It was recommended that she participate in physical therapy for muscle stretching and pain reduction.  Tr. at 122.  A psychiatric evaluation from October of 2001 indicated:

> Margo does seem to be suffering from a recurrence of her major depression.  I do think that adding the Wellbutrin to the Paxil was a perfectly reasonable treatment strategy and she does seem to be starting to respond to that.  She is tolerating the medication well

without problem.  I would be hesitant at this point to make any changes as she really hasn't had an adequate trial of the Wellbutrin yet.

Tr. at 137.

A medical report of June 17, 2002, prepared by Dr. Manchanda, indicated that plaintiff suffered from diabetes, hypertension, hyperlipidemia and right side knee pain.  Tr. at 150.

Plaintiff has a history of a hysterectomy and colon surgery and there was a diagnosis of degenerative changes in the spine with levoscoliosis of the lumbar portion and sclerosis in the sacroiliac joints.  Tr. at 151.  As a result of her complaints of right knee pain, she underwent x-rays which resulted in the diagnosis of a "normal right knee."  Tr. at 152.  A medical DDS report of August 12, 2002, explained:

> IMPAIRMENTS:   fibromyalgia, diabetes, and depression
>
> * * *
>
> ISSUE AND RESPONSE:   37 yof MDD recurrent in partial remission, w/seasonal component.  Schizotypal personality traits. NIDDM, fibromyalgia.  Meds: Paxil 60 mg q day, Cytomel 50 mg q day, Melatonin 2 mg hs, possible sleep apnea.  Psych visits every 3 mo.  No psychotherapy & psych reviews are being reduced as clmt attains stability.  Enjoys computer, fishing, camping, her daughter, other people.  In public has panic attachks & leaves immediately. Grooming is poor.  Work has been fairly inconsistent. C/O pain 3/10. Obese, BMI=47.7, possible sleep apnea.  It appears her mental illness poses a very insignificant limitation on her ability to function. . . .

Tr. at 176.

An MRI performed on plaintiff's lumbar spine in September of 2002 resulted in the following impression from Dr. Manchanda:

- 3 -

> Degenerative disc disease at L5-S1 with a peripheral hyperintense zone suggestive of an outer annular tear. No evidence of focal disc protrusion, extrusion, significant compression of the thecal sac, traversing or exiting nerve roots.

Tr. at 194.

Dr. Manchanda stressed the need for plaintiff to exercise and quit smoking. Tr. at 196. See also Tr. at 198, 199, 201. In October of 2003, Dr. Manchanda explained:

> The patient is currently on Paxil and Wellbutrin. We have tried Zyprexa on her earlier which she did not tolerate it at all and she was falling asleep all the time. At this time, her symptoms of bipolar disorder are not very prominent and she needs a complete lifestyle change. She needs to go out and socialize, do some vounteer work so that she is physically tired and she can go back to bed. She needs good sleep hygiene and I would strongly believe that she needs less of the medication for sleep and more of the physical activity. She also needs to go out and socialize and meet more people. It would be helpful for her to find a person that would be a good companion that she is looking for. We will encourage her to socialize more. We will see her back in a month's time.

Tr. at 206.

After reviewing the record, the ALJ concluded:

> After a thorough review of the entire record and testimony, the undersigned finds the claimant has the residual functional capacity to perform unskilled, simple, low-stress work at the sedentary and light exertional levels that involves only limited public contact. This finding is supported by the objective medical evidence as a whole, and by the claimant's level of daily activity, as discussed above.
>
> The vocational expert testified the claimant's past work was unskilled to semiskilled and at the light to medium exertional levels. Considering the claimant's past relevant work in light of her residual functional capacity and the testimony of the vocational expert, the undersigned finds the claimant could not perform her past relevant work.

Tr. at 17.

Relying on the testimony of a vocational expert, the ALJ concluded that plaintiff was capable of performing a limited range of sedentary and light exertional level work which existed in substantial numbers in the economy.

This Court is required to uphold the decision of the Commissioner if it is supported by substantial evidence and the Commissioner applied the correct legal criteria. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In deciding whether or not an individual is entitled to social security benefits, the ALJ is required to follow the five-step inquiry identified in 20 C.F.R. § 404.1520. First, the ALJ must determine whether or not the plaintiff is performing gainful work. If not, the ALJ must determine whether or not the plaintiff suffers from a severe condition. The third step of the inquiry requires the ALJ to determine whether or not the condition or conditions plaintiff suffers from meet or equal an impairment listed in the regulations. If an individual meets the impairments, they are presumed disabled and there is no further inquiry. The fourth step requires the ALJ to determine whether or not the plaintiff is capable of performing past relevant work. If, as in the instant case, the ALJ concludes that plaintiff cannot perform her past relevant work, the burden then shifts to the Commissioner to demonstrate that there are jobs existing in the economy which plaintiff could perform.

Plaintiff maintains that the Commissioner erred at step three in finding that plaintiff did not meet one of the listed impairments. Plaintiff also maintains that the Commissioner erred in finding that she was capable of performing a limited range of light and sedentary work. Finally,

- 5 -

plaintiff maintains that she is entitled to reversal of the decision because she was unrepresented at her hearing and felt she was treated unfairly.

Plaintiff claims that she is entitled to reversal of the decision of the Commissioner because she was unrepresented at the hearing.  When a social security claimant is not represented by counsel at the hearing before the ALJ, the ALJ has a special duty to ensure that a full and fair administrative record is developed.  Part of this duty also requires the ALJ to advise the claimant of the right to be represented by an attorney.  In the present case, in the opening statement presented at the hearing, the ALJ explained:

> ALJ:   . . . In the Notice of Hearing it mentioned that you had a right to have a representative.  There are agencies such as Legal Aid, Legal Action, who may represent you for free.  There are attorneys who may represent you on a contingency fee basis.  This means that if you don't win they don't get paid and their pay is no greater than 25 percent of any back benefits that you may have coming up to a limit of $5,300.  An attorney may help you gather evidence, prepare you for hearing, call witnesses, cross-examine witnesses, present evidence both before, after and during the hearing, and take an appeal if necessary.  It's up to you.  If you want to go on today, we'll go on today.  If you want to adjourn and seek representation, I will let you do that.
>
> CLMT:   We can go on.

Tr. at 245-46.  See also Tr. at 24, 30.

My review of the record leads to my conclusion that plaintiff's *pro se* appearance before the ALJ did not result in an unfair administrative adjudication.

> The ultimate responsibility for ensuring that a claimant receives a full and fair hearing lies with the ALJ.  *Richardson v. Perales*, 402 U.S. 389, 410 (1971).  Thus, when a disability claimant appears at a hearing without counsel, the ALJ has a special duty not only to conduct a fair proceeding but also to ensure that a full record is developed.  *Duncan v. Secretary of Health and Human Servs.*, 801

F.2d 847, 856 (6th Cir. 1986).  The mere fact that a claimant is acting without counsel, however, is not grounds for reversal.  *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981).

*Lovett v. Commissioner of Social Security*, 81 F.3d 160, 1996 WL 137813 (C.A.6 Tenn.), an unpublished opinion, a copy of which is attached.

Having carefully reviewed the entire record in this case, I find that there is substantial evidence supporting the decision of the ALJ.  Dr. Mahar, plaintiff's psychiatrist, diagnosed plaintiff with a major depressive disorder and rated plaintiff with a global assessment of functioning score of 68.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000).  This score represents mild symptoms functional limitations. The reports of Dr. Soncrant and the assessment of Dr. Dundon fully support a finding that plaintiff is capable of performing some employment.  Tr. at 157-159, 240-242.  Plaintiff's treating physician, Dr. Kahn, indicated that plaintiff needed to work again.  Tr. at 226.  Dr. Kahn also encouraged plaintiff to engage in exercise.  Tr. at 226.  See also the opinion of Dr. Taylor.  Tr. at 178.

Having carefully reviewed the entire record, I find that there is substantial evidence to support the findings of the Commissioner.  Therefore, the Commissioner's decision denying plaintiff's request for benefits will be affirmed.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  March 21, 2007